WILLIAM J. GEDDES
Nevada Bar No. 6984
THE GEDDES LAW FIRM, P.C.
8600 Technology Way, Suite 115
Reno, Nevada 89521
Phone: (775) 853-9455
Fax: (775) 299-5337
Email: Will@TheGeddesLawFirm.com
*Attorney for Plaintiff Alicia DePaulis*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ALICIA DEPAULIS, an individual,

                Plaintiff,

vs.

CHURCHILL COUNCIL ON ALCOHOL AND OTHER DRUGS, d.b.a. NEW FRONTIER TREATMENT CENTER, a domestic non-profit corporation; LANA ROBARDS, an individual; DEBBIE RIDENOUR, an individual; DOE BUSINESS ENTITIES 1-10; and DOE INDIVIDUALS 1-50.

                Defendants.

CASE NO: 3:16-cv-00675

**VERIFIED COMPLAINT**

**JURY DEMAND**

    COMES NOW Plaintiff ALICIA DEPAULIS, by and through her counsel, WILLIAM J. GEDDES, ESQ. of the law firm THE GEDDES LAW FIRM, P.C., and hereby complains of Defendant CHURCHILL COUNCIL ON ALCOHOL AND OTHER DRUGS, d.b.a. NEW FRONTIER TREATMENT CENTER, LANA ROBARDS, an individual DEBBIE RIDENOUR, an individual; DOE BUSINESS ENTITIES 1-10, and DOE INDIVIDUALS 1-50, inclusive, as follows.

## I.

## STATEMENT OF THE CASE

    This is an employment discrimination case arising under Title VII and the *Americans with Disabilities Act* ("ADA"). This case also asserts supplemental-jurisdiction, state-tort claims. Plaintiff ALICIA DEPAULIS ("PLAINTIFF") was an employee of Defendant CHURCHILL COUNCIL ON ALCOHOL AND OTHER DRUGS, d.b.a. NEW FRONTIER TREATMENT CENTER.

    PLAINTIFF alleges herein that David Dummar, a supervisor of the treatment center made

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

repeated, unwanted sexual advances toward PLAINTIFF in the workplace, which she repeatedly rejected.   Plaintiff further alleges that Mr. Dummar would not accept her rejections, and that he engaged in a late-night stalking of PLAINTIFF at her home, causing her severe emotional distress and fear for her safety.   Upon learning of such matters, the employer repeatedly failed to take prompt, appropriate, and corrective action against Mr. Dummar for his misconduct and for the protection of PLAINTIFF, during the remainder of her employment at the treatment center.

First, the employer ordered PLAINTIFF to communicate with Mr. Dummar, to tell him that she was not interested in having a romantic relationship with him, and to tell him not to communicate with her at work.   However, this was harassing to PLAINTIFF because she had already told Mr. Dummar that she did not want to have a romantic relationship with him on multiple occasions, yet he had disregarded her rejections.   PLAINTIFF told the employer that she was not comfortable communicating with Mr. Dummar about anything, yet she was forced to do so.   After PLAINTIFF again told Mr. Dummar that she had no romantic interest in him and that he should not communicate with her, he replied that he could not honor that request, and he wrote out a disturbing email to her.   PLAINTIFF communicated this fact and forwarded Mr. Dummar's emails to the employer.   PLAINTIFF's acute anxiety persisted, and her doctor ordered her to stay at home for three days, prescribing her medication.

Second, the employer informed PLAINTIFF that they would speak with Mr. Dummar about his misconduct and take care of the problem while PLAINTIFF was on paid medical leave at home for three days.   However, they did not do so, and PLAINTIFF informed her employer that she did not feel safe coming back to work until they had addressed this issue with Mr. Dummar, and until she had obtained a protective order from the court that would order Mr. Dummar to keep away from her.   After delaying in this matter, the employer finally spoke with Mr. Dummar on the day he was served a protective order at work.   The protective order commanded Mr. Dummar to keep 100 feet away from Plaintiff and to have no communication with her.   The protective order was in effect during the remainder of PLAINTIFF's employment at the treatment center.

Third, when PLAINTIFF returned to work, the employer made absurd excuses for Mr. Dummar's misconduct and unjustly minimized the problem.   The employer told PLAINTIFF that Mr. Dummar did not pose any danger to PLAINTIFF because Mr. Dummar had cried to management, when

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

confessing his romantic love for PLAINTIFF. At that time, the employer knew a protective order was in effect, as a court had concluded that Mr. Dummar presented an imminent danger to PLAINTIFF. If the employer's response were not absurd enough, the employer next informed PLAINTIFF that Mr. Dummar could not control himself around her because she was such a "beautiful woman." This statement contradicted the employer's claim that he did not pose any danger to her. This statement also amounted to sexual stereotyping that further victimized PLAINTIFF because of her sex.

Fourth, after PLAINTIFF returned to work, and continuing until Plaintiff's employment ended about a month later, the employer continuously failed to take prompt, appropriate, and corrective action to eliminate the resulting, hostile-work environment or to protect PLAINTIFF in the workplace. This resulted in PLAINTIFF essentially being trapped in her office, as she could not enjoy full and free movement and access to the entire office complex, to carry out her duties, for fear of encountering Mr. Dummar somewhere at the worksite. Not only did the employer fail to protect PLAINTIFF from Mr. Dummar in the workplace, but the employer also failed to offer reasonable assurances of that protection in the workplace. Predictably, Mr. Dummar violated the protective order and repeatedly came near PLAINTIFF at work, glaring at her in a menacing way. These conditions interfered with PLAINTIFF's ability to perform her work and continued to cause PLAINTIFF to suffer acute anxiety and fear for her safety in the workplace.

Fifth, the employer attempted to punish PLAINTIFF, not Mr. Dummar, by attempting to reduce PLAINTIFF's work schedule, while increasing Mr. Dummar's work schedule.

Sixth, the employer also failed to reasonably accommodate PLAINTIFF's medical disability, existing in the form of her acute anxiety arising from these incidents, for which she was medically treated. Plaintiff was not paid for her time off from work while on her 3-day medical leave, as the employer previously had promised that she would be. As well, Plaintiff was not provided her free counseling sessions to treat her anxiety, that she requested and was entitled to receive as an employee benefit.

With no improvement to her situation in sight, PLAINTIFF again protested such harassing and discriminatory conduct, to no avail. In response, the employer informed PLAINTIFF that her situation would not change unless PLAINTIFF made a change. PLAINTIFF reasonably understood that to mean

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

3

that PLAINTIFF would continue to be subjected to such unlawful terms and conditions of her employment as long as she worked there. Accordingly, Plaintiff was forced by her employer to resign, and she was constructively discharged on November 26, 2014.

The employer's unlawful, adverse, discriminatory actions taken against PLAINTIFF included: (1) subjecting her to a hostile-work environment based on her sex and disability; (2) failing to accommodate PLAINTIFF's disability arising from the sexual harassment of Mr. Dummar; (3) retaliating against PLAINTIFF based on her protected conduct; (4) subjecting PLAINTIFF to unlawful terms and conditions of employment; and (5) constructively discharging PLAINTIFF.

In her state-tort claims, PLAINTIFF further alleges that her supervisors, Defendants LANA ROBARDS and DEBBIE RIDENOUR engaged in intentional and egregious conduct, when refusing to protect PLAINTIFF in the workplace or offer reasonable assurances of the same, which resulted in further acute anxiety to PLAINTIFF. Defendants' acts were extreme and outrageous and caused Plaintiff to suffer severe emotional distress. PLAINTIFF also asserts that the employer and ROBARDS engaged in culpable conduct when hiring, training, supervising, and retaining LANA ROBARDS, and DEBBIE RIDENOUR, and Mr. Dummar, amounting to intentional or egregious conduct and deliberate actions certain to result in PLAINTIFF's injuries. Defendants knew, or should have known that David Dummar was not fit for his position, to be retained in his position, and to be in close physical proximity to PLAINTIFF in the workplace. Defendants knew that Mr. Dummar had dangerous propensities, the effect of which would foreseeably cause harm and further harm to subordinate employees, including PLAINTIFF, which actually occurred.[1] The employer also knew that Defendants LANA ROBARDS and DEBBIE RIDENOUR had failed to take prompt, appropriate, and corrective action, for which it was negligent in supervising and retaining these two supervisors.

---

[1] NRS 616A.020 provides that worker's compensation rights and remedies exclusively govern injuries sustained by accident, arising out of and sustained in the course of employment. However, this statute does not apply here because PLAINTIFF's injuries did not arise from a workplace "accident," and the employer's conduct was intentional and/or egregious conduct.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

PLAINTIFF further asserts that, after she was no longer employed by the treatment center, Defendants LANA ROBARDS and DEBBIE RIDENOUR, made false-light-invasion-of-privacy statements to other co-workers at the treatment center about the stalking incident and PLAINTIFF's relationship to Mr. Dummar.   This action seeks equitable relief, including declaratory relief, injunctive relief, "front pay" and "back pay."   This action also seeks compensatory and punitive damages.

## II.

### JUISDICTION AND VENUE

1.      The federal claims of this case are maintained pursuant to 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States").   In particular, this case asserts federal discrimination claims, actionable under Title VII, codified at 42 U.S.C. § 2000e *et seq*. and the ADA/ADAAA, codified at 42 U.S.C. § 12101 *et seq*.  This Court has supplemental jurisdiction over the state-law claims, pursuant to 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").

2.      Venue is proper in the U.S. District Court situated in Reno, Nevada, under 28 U.S.C. § 1391(b) because: (a) some of the Defendants are residents of Northern Nevada, in or around Fallon, Nevada, and venue is proper in a judicial district in which any defendant resides; and (b) a substantial part of the events or omissions giving rise to the claims of this case occurred in Fallon, Nevada, including at the New Frontier Treatment Center, situated in the City of Fallon, in the County of Churchill, Nevada.

## III.

### PARTIES

3.      At all relevant times herein, Plaintiff ALICIA DEPAULIS was a citizen of the state of Nevada, residing in the County of Churchill, employed by NEW FRONTIER as an administrative assistant, at the New Frontier Center, situated at 1490 Grimes Street, in Fallon, Nevada.

4.       On information and belief, at all relevant times herein, Defendant CHURCHILL COUNCIL ON ALCOHOL AND OTHER DRUGS, d.b.a. NEW FRONTIER TREATMENT CENTER

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

("NEW FRONTIER"), was a domestic, non-profit corporation registered and authorized to do business in the State of Nevada, and it was actually doing business in the state of Nevada, providing substance-abuse-treatment services, and it was the employer of Plaintiff ALICIA DEPAULIS, Defendant LANA ROBARDS, DEFENDANT DEBBIE RIDENOUR, and David Dummar.

5.     On information and belief, at all relevant times herein, Defendant LANA ROBARDS ("ROBARDS") was a citizen of the state of Nevada, residing in the County of Churchill, who was employed by NEW FRONTIER, as its executive director, and Defendant ROBARDS was a direct supervisor to PLAINTIFF, at the New Frontier Treatment Center, situated at the New Frontier Center, situated at 1490 Grimes Street, in Fallon, Nevada.

6.     On information and belief, at all relevant times herein, Defendant DEBBIE RIDENOUR ("RIDENOUR") was a citizen of the state of Nevada, residing in the County of Churchill, who was employed by NEW FRONTIER, and Defendant RIDENOUR was a direct supervisor to PLAINTIFF, at the New Frontier Treatment Center, situated at the New Frontier Center, situated at 1490 Grimes Street, in Fallon, Nevada.

7.     The true names and capacities, of the Defendants sued herein as DOE BUSINESS ENTITIES 1-10, inclusive, are unknown to PLAINTIFF, who sues those Defendants by such fictitious names.  PLAINTIFF alleges, on information and belief, that each of the Defendants sued herein as DOE BUSINESS ENTITIES 1-10, inclusive, at all relevant times, performed acts, or were responsible for performing acts, relating to business-operations and employment matters at New Frontier Treatment Center, including: communications made by its employees and agents; the hiring, training, supervision, retention, and disciplining of employees and agents at New Frontier Treatment Center; stalking incidents and hostile-work-environment incidents; defamation and invasion-of-privacy incidents; and the events occurring in the workplace environment and outside the workplace environment, as described herein.  PLAINTIFF alleges, on information and belief, that each of the Defendants sued herein as DOE BUSINESS ENTITIES 1-10, inclusive, are responsible in some manner for the events and injuries alleged herein.   PLAINTIFF alleges, on information and belief, DOE BUSINESS ENTITIES 1-10, inclusive, are, and at all times relevant hereto were, domestic or foreign business entities of any kind, including but not limited to corporations, associations, partnerships, companies,

The Geddes Law Firm, P.C.,
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

national associations, organizations, unions, non-profit organizations, and joint ventures, that were qualified to do business in Nevada or held themselves out to the public to be qualified to do business in Nevada, and actually did business as an entity in the State of Nevada, had a presence in Nevada or are otherwise amenable to suit in Nevada under Nevada's "Long-Arm" statutes.  PLAINTIFF will seek leave of Court to amend this *Complaint* to state the true names and capacities of DOE BUSINESS ENTITIES 1-10, inclusive, when they have been ascertained.

8.      The true names and capacities, of the Defendants sued herein as DOE INDIVIDUALS 1-50, are unknown to PLAINTIFF, who sues those Defendants by such fictitious names.  PLAINTIFF alleges, on information and belief, that each of the Defendants sued herein as DOE INDIVIDUALS 1-50, inclusive, at all relevant times, performed acts, or were responsible for performing acts, relating to business-operations and employment matters at New Frontier Treatment Center, including: communications made by its employees and agents; the hiring, training, supervision, retention, and disciplining of employees and agents at New Frontier Treatment Center; stalking incidents and hostile-work-environment incidents; defamation and invasion-of-privacy incidents, and the events occurring in the workplace environment and outside the workplace environment, as described herein.   PLAINTIFF alleges, on information and belief, that each of the Defendants sued herein as DOE INDIVIDUALS 1-50, inclusive, are responsible in some manner for the events and injuries alleged herein.  PLAINTIFF alleges, on information and belief, DOE INDIVIDUALS 1-50, inclusive, are, and at all times relevant hereto were residents of the state of Nevada or had a presence in Nevada or are otherwise amenable to suit in Nevada under Nevada's "Long-Arm" statutes.  PLAINTIFF will seek leave of Court to amend this *Complaint* to state the true names and capacities of such Defendants when they have been ascertained.

9.      On information and belief, at all relevant times herein, each Defendant was the employer, supervisor, employee, and/or agent of the other, and some or all of Defendant's acts and omissions occurred during the course and scope of such employment and agency, and such acts and omissions were taken at the instruction of, at the request of, at the behest of, and/or for the benefit of one or more of the other Defendants.

/ / /

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

**IV.**

**GENERAL ALLEGATIONS COMMON TO ALL CLAIMS**

10.     PLAINTIFF worked at the New Frontier Center from June 15, 2014 to November 26, 2014, as an administrative assistant. During her employment at the New Frontier Center, PLAINTIFF's duties required that she work throughout the treatment center's entire building-complex/worksite, not merely in her office.

11.     On or about August 1, 2014, Mr. Dummar was hired at the treatment center, and he immediately expressed to PLAINTIFF an interest in having a romantic relationship with her. PLAINTIFF refused and rebuffed that advance, which communicated to him that she was not interested in having a romantic relationship with him.  PLAINTIFF informed the management at the treatment center of this fact, and they were on notice of this matter at that time.  The management team responded inappropriately by laughing about the matter.

12.     On or about October 15, 2014, Mr. Dummar learned that PLAINTIFF's relationship with her boyfriend had ended, and he then again expressed his desire to have a romantic relationship with PLAINTIFF.  Again, PLAINTIFF refused and rebuffed that advance.  Thereafter, Mr. Dummar repeatedly attempted to perpetrate ruses to come over to PLAINTIFF's house, but PLAINTIFF repeatedly rebuffed and refused those advances.

13.     On or about Thursday, October 23, 2014 at 1:00 a.m., Mr. Dummar stalked PLAINTIFF at her home.  PLAINTIFF was initially asleep, and while she slept, Mr. Dummar sent PLAINTIFF approximately ten text messages and seven phone calls.  PLAINTIFF was awakened by the ringing of her home's doorbell many times by Mr. Dummar, his loud banging on her windows, and his screaming her name.  At the time, PLAINTIFF was a single woman having no other adult in the home, and she was with her young foster children. PLAINTIFF would not let David Dummar in her home, and she feared for her safety and the safety of her children. Mr. Dummar eventually fled the scene, but the incident caused PLAINTIFF to become sick to her stomach, and she suffered resulting sleepless nights and acute anxiety in the aftermath of that stalking incident.

14.     Mr. Dummar's actions in coming to PLAINTIFF's home that night were motivated by his desire to pursue a romantic relationship with PLAINTIFF, because of her sex.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

15.     Later that day, Thursday, October 23, 2014, PLAINTIFF sent an email to Mr. Dummar, asking him to explain that stalking incident.  Mr. Dummar responded in a series of bizarre emails, which further demonstrated to PLAINTIFF that Defendant had an obsessive, romantic interest in her, about which she was very uncomfortable.

16.     That same day, October 23, 2014, PLAINTIFF informed Defendant RIDENOUR about the stalking incident and expressed that she did not feel safe or comfortable in the workplace with Mr. Dummar.  PLAINTIFF's work duties were not confined to a separate area away from where Mr. Dummar worked or could be expected to work, at any given time.  Defendant RIDENOUR responded by telling PLAINTIFF that Mr. Dummar's behaviors were completely inexcusable and inappropriate, and that Defendant RIDENOUR was going to tell the Defendant ROBARDS about the matter.

17.     Subsequently, Defendant RIDENOUR contacted PLAINTIFF, informing her that Defendant ROBARDS did not want to speak to PLAINTIFF, but would speak to Mr. Dummar, instead. PLAINTIFF then informed Defendant RIDENOUR that Mr. Dummar's employee file was incomplete, which she learned during the course of her job duties when auditing employee files to ensure regulatory compliance.  More specifically, PLAINTIFF advised Defendant RIDENOUR that Mr. Dummar had not completed his workplace harassment training yet, and the employer did not have a current MFT license on file, among other missing items for him.  PLAINTIFF advised Defendant RIDENOUR that she was not comfortable scheduling a time with Mr. Dummar to complete his missing trainings.  Defendant RIDENOUR directed PLAINTIFF to email Mr. Dummar, to specifically tell him that she was not romantically interested in him and not to contact PLAINTIFF, but to go to Defendant RIDENOUR directly if he needed anything.  PLAINTIFF questioned the propriety of that instruction, by telling Defendant RIDENOUR that she was not comfortable communicating with Mr. Dummar about any matter whatsoever.  She had previously rebuffed his sexual advances, to no avail.  Nevertheless, PLAINTIFF was forced to communicate with Mr. Dummar, as ordered by Defendant RIDENOUR.

18.     Accordingly, on Saturday, October 25, 2014, PLAINTIFF sent an email to Mr. Dummar again informing him that she had no romantic interest in him, and that she was not comfortable maintaining their professional relationship.  PLAINTIFF further requested that Mr. Dummar not speak to her at the treatment center, and that if he needed anything or had a question or concern related to

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

9

work, to please contact Defendants ROBARDS or RIDENOUR. PLAINTIFF emphasized, "under no circumstance, do I want you speaking to me," adding "do not call me, text, or email me anymore. I want no further communication with you."

19. On Sunday, October 26, 2014 at 3:11 a.m., Mr. Dummar sent PLAINTIFF an email, wherein he offered additional bizarre explanations about his feelings and conduct toward her.

20. On Monday, October 27, 2014, PLAINTIFF informed Defendant RIDENOUR that she was feeling ill and would not be coming to work that day. PLAINTIFF further explained that Mr. Dummar told her he would not comply with her request to not communicate with her and that he provided a lengthy, disturbing email to her. PLAINTIFF also informed Defendant RIDENOUR that Plaintiff intended to file a police report against Mr. Dummar. PLAINTIFF informed Defendant RIDENOUR of her acute anxiety regarding Mr. Dummar.

21. Later that day, October 27, 2014, Defendant RIDENOUR requested that PLAINTIFF send to Defendant RIDENOUR the emails that Mr. Dummar previously sent to PLAINTIFF. PLAINTIFF complied with that request and sent the emails to Defendant RIDENOUR.

22. Later that day, October 27, 2014, PLAINTIFF informed Defendant RIDENOUR that PLAINTIFF saw her doctor that day, and that PLAINTIFF's doctor medically ordered PLAINTIFF to stay home for three days, and he gave PLAINTIFF a prescription for medication to help her with her acute anxiety attacks resulting from these events.

23. Defendants RIDENOUR and ROBARDS agreed that PLAINTIFF should take three days off from work for medical reasons, and during that time, they would communicate with Mr. Dummar concerning his inappropriate conduct and they would otherwise take care of the problem.

24. Mr. Dummar was present at work for two of those three days, when PLAINTIFF was away from work. However, neither Defendants RIDENOUR nor ROBARDS followed through on this matter, nor did they address this issue with Mr. Dummar during that time.

25. Before she was scheduled to return to work, PLAINTIFF learned that Defendants RIDENOUR and ROBARDS had not yet spoken to Mr. Dummar about his inappropriate conduct. Accordingly, PLAINTIFF informed Defendants RIDNENOUR and ROBARDS that she was too fearful to return to work without Mr. Dummar having been spoken to by Defendants RIDENOUR and

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

10

ROBARD, and without having a protection order issued by the court.

26.     PLAINTIFF subsequently obtained a Temporary Protection Order ("TPO") from the Court, which ordered Mr. Dummar to keep 100 feet away from PLAINTIFF and not to communicate with her.  The TPO was served on Mr. Dummar at the treatment center.  This TPO was subsequently extended by the Court, and it was in effect throughout Plaintiff's remaining tenure at the treatment center.  At all times relevant herein, Defendant NEW FRONTIER's management team was aware of the requirements of the TPO.

27.     On information and belief, Defendants RIDNENOUR and ROBARDS failed to confront Mr. Dummar about his misconduct until the day he was served the TPO.  This delay underscored their lackadaisical attitude and evidenced a deliberate indifference to PLAINTIFF's rights and safety.

28.     Plaintiff subsequently returned to work, and Defendant RIDENOUR informed PLAINTIFF that they had a "good talk" with Mr. Dummar.  However, such an action did not constitute prompt, appropriate, or corrective action.  Indeed, Defendant NEW FRONTIER's management acted as apologists for Mr. Dummar, informing PLAINTIFF that Mr. Dummar was not a threat or danger to PLAINTIFF because he had cried to management and confessed his romantic love for PLAINTIFF.  At that time, the employer knew a protective order was in effect, as a court had concluded that Mr. Dummar presented an imminent danger to PLAINTIFF.  If the Defendant RIDENOUR's response were not absurd enough, she next informed PLAINTIFF that Mr. Dummar could not control himself around her because she was such a "beautiful woman."   This statement contradicted Defendant RIDENOUR's claim that he did not pose any danger to her.  This statement also amounted to sexual stereotyping that further victimized PLAINTIFF because of her sex.  This statement also confirmed that Mr. Dummar was motivated to act as he did because of PLAINTIFF's sex.  This statement underscored Defendant NEW FRONTIER's deliberate indifference to PLAINTIFF's rights and safety.

29.     On the following day, Tuesday October 28, 2014, PLAINTIFF requested that Defendant RIDENOUR issue a company authorization-referral for a therapist-counseling session to treat PLAINTIFF's resulting anxiety.  In this regard, NEW FRONTIER employees are entitled to receive three such counseling sessions, free of charge, as part of their employee benefits.  Later that day, PLAINTIFF requested that Defendant RIDNEOUR provide PLAINTIFF with an authorization-referral

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

11

to see a different doctor because the first doctor had a conflict of interest and could not see PLAINTIFF. No such authorization-referral was ever made by Defendant NEW FRONTIER, even though PLAINTIFF asked two or three more times for such an authorization-referral.

30.     A hostile work environment resulted from the acts and omissions of Defendants and Mr. Dummar. PLAINTIFF was essentially trapped in her office, as she could not enjoy full and free movement and access to the entire office complex, to carry out her duties, for fear of encountering Mr. Dummar somewhere at the worksite. Not only did the Defendants fail to protect PLAINTIFF from Mr. Dummar in the workplace, but they also failed to offer reasonable assurances of that protection in the workplace. Predictably, Mr. Dummar violated the protective order and repeatedly came near PLAINTIFF at work, glaring at her in a menacing way. These conditions interfered with PLAINTIFF's ability to perform her work and continued to cause PLAINTIFF to suffer acute anxiety and fear for her safety in the workplace.

31.     This hostile work environment, based on PLAINTIFF's sex existed for many reasons, including because PLAINTIFF was forced to fear for her safety, and she was forced to endure great discomfort and anxiety in the presence of Mr. Dummar, especially when he glared at PLAINTIFF. The work environment was also hostile because Defendant NEW FRONTIER's management signaled its unwillingness to take prompt, appropriate, and corrective action, which made PLAINTIFF feel like she was a trapped victim who was being wrongfully punished or blamed. The work environment was also hostile because PLAINTIFF was excluded from normal company and operations at work, and she no longer had freedom of movement throughout the office environment. The work environment was hostile because PLAINTIFF could not trust that Defendant NEW FRONTIER's management had her employment interests or safety in mind. The work environment was hostile because PLAINTIFF was constantly in fear that Mr. Dummar may appear in her presence at any time in the office because he was allowed to do so by Defendant NEW FRONTIER's management—whether he was scheduled to work or not. In this regard, on information and belief, Defendant NEW FRONTIER's management failed to timely and properly notify its key personnel of the court's TPO that was in effect to protect PLAINTIFF from Mr. Dummar, enabling the TPO to be violated by Mr. Dummar, who appeared to not think twice about being in PLAINTIFF's presence at work.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

32.     On information and belief, Defendant NEW FRONTIER failed to use reasonable efforts to give effect to the requirements of the TPO, in the workplace.  Mr. Dummar was allowed to freely roam throughout the workplace, notwithstanding the TPO, and he was allowed to freely walk by PLAINTIFF's office, which he did, glaring at her through her office window.

33.     On information and belief, Defendant NEW FRONTIER's management team's failures to raise a proper alert among staff members for PLAINTIFF's safety further underscored Defendant NEW FRONTIER's fundamental, deliberate indifference to PLAINTIFF's rights and safety.

34.     On information and belief, on Saturday, November 8, 2014, a non-scheduled work day for Mr. Dummar, Mr. Dummar was reportedly seen in the office working that day. Had PLAINTIFF worked that day, to avoid Mr. Dummar's normally-scheduled working hours, she likely would have been subjected to his personal presence.   PLAINTIFF feared his presence on any day of the week.

35.     On Wednesday, November 12, 2014, a scheduled workday for Mr. Dummar, Mr. Dummar violated the TPO, and PLAINTIFF saw him pace back and forth near her office, and she saw him glaring at her that day, through her office window, which was quite unnerving.

36.     Defendants took further punitive and harassing action against PLAINTIFF, when they attempted to reduce PLAINTIFF's work schedule, while increasing Mr. Dummar's work schedule.

37.     Defendants took further punitive and harassing action against PLAINTIFF, when they failed to reasonably accommodate PLAINTIFF's medical disability, existing in the form of her acute anxiety arising from these incidents, for which she was medically treated.  Plaintiff was not paid for her time off from work while on her 3-day medical leave, as the employer previously had promised that she would be.  As well, Plaintiff was not provided her free counseling sessions to treat her anxiety, that she requested and was entitled to receive as an employee benefit.

38.     With no improvement to her situation in sight, PLAINTIFF again protested such harassing and discriminatory conduct, to no avail.  Specifically, on Friday, November 14, 2014, PLAINTIFF wrote an email to Defendant RIDENOUR setting forth the following complaints relating to the ongoing, adverse, discriminatory actions taken against her and relating to the hostile work environment that she was being forced to endure:

(A)     PLAINTIFF complained that she had still not received the referral-authorization

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

13

for the counseling services she requested some time ago, for her acute anxiety;

(B)     PLAINTIFF complained that she could not understand why some members of the treatment center management team had not been made aware of the TPO and the no-contact order against Mr. Dummar, thereby allowing PLAINTIFF to be further exposed to potential danger;

(C)     PLAINTIFF complained of no longer being allowed to freely move about the office site, as she was previously allowed to do, prior to the stalking incident;

(D)     PLAINTIFF complained that she felt as if she were in danger because of Mr. Dummar's uncontrolled presence in the workplace;

(E)     PLAINTIFF complained that Defendants RIDENOUR and ROBARD's inaction was inappropriate, as they concluded that Mr. Dummar was not a threat or danger to PLAINTIFF because he was crying and seemed remorseful of his actions, while they failed to properly consider PLAINTIFF's feelings, given that she was the stalking victim;

(F)     PLAINTIFF complained that she felt as if she were being victimized all over again while working at the treatment center, as she did not have normal freedom of movement in the workplace, as she did prior to the incident;

(G)     PLAINTIFF complained that, she was bound to run into Mr. Dummar, as she did two days previously on Wednesday, when he saw her, and went up and down the stairs three times in a 5-minute period, and when he passed with 3 different clients back and forth in front of her office, staring at PLAINTIFF through her window;

(H)     PLAINTIFF complained that Defendant RIDENOUR was inappropriately seeking to reduce Plaintiff's work schedule, while at the same time increasing Mr. Dummar's working schedule;

(I)     PLAINTIFF complained that Mr. Dummar was reported to have worked on an unscheduled day, the previous Saturday;

(J)     PLAINTIFF complained that Defendant RIDENOUR was forcing her to take unpaid leave for the time she took off for counseling arising from the incidents, when such time should have been paid leave;

(K)     PLAINTIFF requested that Mr. Dummar not work in the same building any

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

14

more, to avoid creating a very uncomfortable work environment for her;

    (L)    PLAINTIFF complained that she was tired of being repeatedly victimized, when the treatment center should be protecting her from harassment, not creating an even more hostile work environment for her, as it was doing; and

    (M)    PLAINTIFF complained that the matter had to be resolved, as the problems were adversely affecting her work performance and attendance.

39.    Later that evening, on Friday, November 14, 2014, Defendant ROBARDS responded to PLAINTIFF's email, signaling Defendant NEW FRONTIER's further refusal to take prompt, appropriate, and corrective action.  In particular, Defendant ROBARDS stated, "Remember Alicia you were both working at new frontier when this was brought into the workplace," adding "This is not a situation your employer created."  Defendant ROBARDS concluded the message by saying, "But I do not see either of your jobs changing unless you choose to make a change," which PLAINTIFF reasonably took to mean that PLAINTIFF would continue to be subjected to these unlawful terms and conditions of her employment as long as she worked there.

40.    Based on the foregoing, the working conditions at NEW FRONTIER's treatment center were and remained so intolerable that a reasonable person in PLAINTIFF's position would have felt compelled to resign.

41.    Based on the foregoing, the retaliating employer, NEW FRONTIER created working conditions so extraordinary and egregious, so as to overcome the normal motivation of a competent, diligent, and reasonable employee, including PLAINTIFF, to remain on the job.

42.    Accordingly, PLAINTIFF was constructively discharged from her employment at NEW FRONTIER's treatment center on November 26, 2014.

43.    On information and belief, after PLAINTIFF was no longer employed by Defendant NEW FRONTIER, Defendant RIDENOUR told other treatment center employees that PLAINTIFF had faked or pretended to have anxiety attacks, when she really did not.  Such statements were false.

44.    On information and belief, after Plaintiff was no longer employed by Defendant NEW FRONTIER, Defendant RIDENOUR told other treatment center employees that PLAINTIFF was exaggerating what happened regarding the stalking incident and that PLAINTIFF was in a romantic

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

15

relationship with Mr. Dummar, but that relationship had gone bad. Such statements were false.

45. At all relevant times herein, PLAINTIFF's acute anxiety described herein was a disorder and disability covered by, and within the meaning of, the ADA/ADAAA, codified at 42 U.S.C. § 12102 *et seq.*, including because it manifested in and constituted mental and physical impairments, including by causing PLAINTIFF to suffer panic attacks, and also by substantially limiting one or more of PLAINTIFF's major life activities, including, sleeping, thinking, breathing, and working, and this impairment also substantially limited a major bodily function of PLAINTIFF, including her stomach and shaking body, and for which disabilities, PLAINTIFF was receiving and/or had received medical treatment and care, including medication and time off from work.

46. At all relevant times herein, PLAINTIFF's acute anxiety constituted mental disabilities and physical disabilities alleged herein (collectively, "Disabilities"), and they were covered by, and within the meaning of, the ADA/ADAAA codified at 42 U.S.C. § 12102 *et seq.*, including for the reason that PLAINTIFF had a record of a having such mental and physical impairments that substantially limited one or more of her major life activities, as described herein.

47. At all relevant times herein, PLAINTIFF's Disabilities were covered by, and within the meaning of, the ADA/ADAAA codified at 42 U.S.C. § 12102 *et seq.*, including for the reason that PLAINTIFF was regarded by Defendants herein, including their agents and employees, has having mental and/or physical impairments (whether actual or perceived) that substantially limited one or more of her major life activities, as described herein.

48. On information and belief, at all relevant times herein, Defendants, and each of them, including their agents and employees:

    (a)    were aware of PLAINTIFF's Disabilities;

    (b)    were aware that PLAINTIFF had a record of such Disabilities; and/or

    (c)    regarded her as having mental and/or physical impairments, including but not limited to her Disabilities, that substantially limited one or more of her major life activities, as described herein.

49. PLAINTIFF is a female, and at all relevant times herein, on information and belief, Defendants' conduct toward PLAINTIFF, described herein, was motivated by PLAINTIFF's sex and

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

16

constituted sexual harassment.

50.     On information and belief, at all times relevant herein, Defendants RIDENOUR and ROBARDS acquiesced in, adopted, and ratified Mr. Dummar's conduct toward PLAINTIFF, described herein and motivated by her sex, because of Plaintiff's sex, including when concluding that Mr. Dummar should be given leniency because he cried to them when confessing his romantic love for PLAINTIFF and because PLAINTIFF was an attractive woman, which also constituted unlawful sexual stereotyping of PLAINTIFF, further victimizing her.

51.     At all times relevant herein, Defendants, and each of them, knew, or reasonably should have known, about Mr. Dummar's repeated, unwanted, inappropriate, and harassing conduct toward PLAINTIFF, but they failed to take prompt, appropriate, and corrective action, which was unlawfully discriminatory and harassing to PLAINTIFF.

52.     PLAINTIFF timely submitted, or caused to be submitted, a charge of discrimination and retaliation with the Nevada Equal Rights Commission (NERC) (Charge No. 0908-15-0124R) and with the Equal Employment Opportunity Commission ("EEOC") (Charge No. 34B-2015-00921).

53.     On November 17, 2016, NERC closed PLAINTIFF's case, Charge No. 0908-15-0124R.

54.     On November 18, 2016, PLAINTIFF received a "right-to-sue letter" that was issued by the EEOC for Charge No. 34B-2015-00921, pursuant to 42 U.S.C. § 2000e-5(f), and PLAINTIFF filed the instant suit within ninety (90) days of the issuance of that "right-to-sue letter."

### *FEDERAL CLAIMS*

### V.

### FIRST CLAIM FOR RELIEF

### UNLAWFUL DISCRIMINATION AND RETALIATION BASED ON GENDER
### (TITLE VII - 42 U.S.C. § 2000e *et seq.*)

### (Asserted against NEW FRONTIER and DOE BUSINESS ENTITIES 1-10)

55.     PLAINTIFF incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

56.     At all relevant times herein, Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, engaged in adverse

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

17

employment action against PLAINTIFF and the terms and conditions of her employment, including by their acts and omissions constituting unlawful discrimination and harassment of PLAINTIFF because of her sex, creating a hostile-work environment for PLAINTIFF because of her sex, imposing tangible-job detriments on PLAINTIFF because of her sex, and constructively discharging PLAINTIFF because of her sex, as alleged herein, subjecting Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 to liability under 42 U.S.C. § 2000e-2 *et seq*.

57.     At all relevant times herein, PLAINTIFF was subjected to repeated verbal comments, intimidation, stalking, glaring, and other verbal and physical conduct of a sexual nature, including violations of the TPO and imminent threats of such repeated conduct in the future, as alleged herein because of her sex, and such conduct was unwelcome, sufficiently severe or pervasive to alter the conditions of PLAINTIFF's employment and create a sexually abusive or hostile work environment, and PLAINTIFF perceived the working environment to be abusive or hostile; and a reasonable person in PLAINTIFF's circumstances would consider the working environment to be abusive or hostile.

58.     At all relevant times herein, PLAINTIFF was subjected to the adverse actions alleged herein, by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them because of her gender, and/or PLAINTIFF's gender was a motivating factor in the decisions of Defendant NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, to take the adverse employment actions against PLAINTIFF, as alleged herein, including those adverse actions occurring as a result of the gender-stereotyping of PLAINTIFF, as alleged herein.

59.     At all relevant times herein, PLAINTIFF engaged in an activity protected under federal law—including PLAINTIFF's opposition to, and complaining to her employer's supervisors and human-resources personnel, of practices by Defendants, and each of them, believed to be unlawful discrimination, as alleged herein—and Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, subjected PLAINTIFF to the adverse employment actions described herein, and PLAINTIFF was so subjected to such adverse employment action because of her participation in such protected activity.

60.     At all relevant times herein, PLAINTIFF suffered one or more tangible job

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

18

detriments/tangible employment actions, as a result of the unlawful discrimination and retaliation alleged herein, including as a result of not being paid for taking 3 days off from work when she was told she would be paid for that time off from work, and when PLAINTIFF was constructively discharged, in a manner and amount to be proven at trial.

61.   On information and belief, as a result of the unlawful, discriminatory, and retaliatory conduct by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, PLAINTIFF has suffered, and continues to suffer, physical and emotional harm, including mental anguish, inconvenience, and the loss of enjoyment of life, for which she is entitled to compensatory damages, in an amount to be proven at trial.

62.   On information and belief, the unlawful, discriminatory, and retaliatory conduct by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, as alleged herein, was malicious and reckless, warranting an award of punitive damages, to punish Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10, in an amount determined by a jury at trial, according to law.

63.   As a result of the unlawful, discriminatory, and retaliatory conduct by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10, and each of them, PLAINTIFF has had to retain the services of attorneys in this matter, and she therefore is entitled to, and seeks reimbursement for, her attorneys' fees and costs, her expert-witness fees, and court costs, in an amount to be proven at trial.

64.   As a result of the unlawful, discriminatory, and retaliatory conduct by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, PLAINTIFF is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10, and each of them, violated PLAINTIFF's rights by engaging in unlawful discrimination and retaliation, as alleged herein.

65.   As a result of the unlawful, discriminatory, and retaliatory conduct by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, PLAINTIFF is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

10, and each of them, to give effect to the rights of PLAINTIFF, and to take other appropriate action, based upon evidence produced at trial.

## VI.

### SECOND CLAIM FOR RELIEF

### UNLAWFUL DISCRIMINATION AND RETALIATION
### BASED ON DISABILITY
### (AMERICANS WITH DISABLITIES ACT and AMENDMENT ACT - 42 U.S.C. § 12101 *et seq.*)

### (Asserted against NEW FRONTIER and DOE BUSINESS ENTITIES 1-10)

66.     PLAINTIFF incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

67.     At all relevant times herein, Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, engaged in adverse employment action against PLAINTIFF and the terms and conditions of her employment because of her Disabilities, including by their acts and omissions constituting harassment to PLAINTIFF, creating a hostile-work environment for PLAINTIFF, imposing tangible-job detriments on PLAINTIFF, engaging in disparate treatment of PLAINTIFF regarding her employee benefits as compared to other similarly-situated employees, including when failing to provide her with a referral-authorization for three free therapy sessions, as she was entitled to receive as part of her job benefits, and constructively discharging PLAINTIFF, described herein subjecting Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 to liability under 42 U.S.C. § 12101 *et seq*.

68.     At all times relevant herein, Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, failed to reasonably accommodate PLAINTIFF's Disabilities, including her acute-anxiety disorder, including: (a) when failing to take prompt, appropriate, and corrective action with respect to Mr. Dummar's inappropriate conduct, including by providing a proper restructuring the conditions of the workplace, so as to enable Plaintiff to work freely and safely at the work site and to perform the essential functions of her job, without coming into contact, or having anxiety of coming into contact, with defendant DUMMAR; and (b) when failing to provide PLAINTIFF with a referral-authorization for three free therapy sessions, as she was entitled to receive as part of her job benefits.

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

69.     At all relevant times herein, PLAINTIFF was subjected to the adverse actions alleged herein, by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them because of her Disabilities, and/or PLAINTIFF's Disabilities were a motivating factor in the decisions of Defendant NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, to take the adverse employment actions against PLAINTIFF, as alleged herein.

70.     At all relevant times herein, PLAINTIFF engaged in an activity protected under federal law, including: (a) when requesting reasonable accommodations for her Disabilities, including her acute-anxiety, as described herein, which requests were denied; and (b) when complaining to her employer's supervisors and human-resources personnel, of practices by Defendants, and each of them, believed to be unlawful discrimination as alleged herein and relating to PLAINTIFF'S Disabilities— and Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, subjected PLAINTIFF to the adverse employment actions described herein, and PLAINTIFF was so subjected to such adverse employment action because of his participation in such protected activity.

71.     At all relevant times herein, PLAINTIFF suffered one or more tangible job detriments/tangible employment actions, as a result of the unlawful discrimination and retaliation alleged herein, including as a result of not being paid for taking 3 days off from work for her medical leave, when she was told she would be paid for that time off from work, and when PLAINTIFF was constructively discharged, in a manner and amount to be proven at trial.

72.     As a result of the unlawful, discriminatory, and retaliatory conduct by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, PLAINTIFF has suffered, and continues to suffer, physical and emotional harm, including mental anguish, inconvenience, and the loss of enjoyment of life, for which she is entitled to compensatory damages, in an amount to be proven at trial.

73.     On information and belief, the unlawful, discriminatory, and retaliatory conduct by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, as alleged herein, was malicious and reckless, warranting an

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

award of punitive damages, to punish Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10, in an amount determined by a jury at trial, according to law.

74.     As a result of the unlawful, discriminatory, and retaliatory conduct by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, PLAINTIFF has had to retain the services of attorneys in this matter, and he therefore is entitled to, and seeks reimbursement for, her attorneys' fees and costs, her expert-witness fees, and court costs, in an amount to be proven at trial.

75.     As a result of the unlawful, discriminatory, and retaliatory conduct by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, PLAINTIFF is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10, and each of them, violated PLAINTIFF's rights by engaging in unlawful discrimination and retaliation, as alleged herein.

76.     As a result of the unlawful, discriminatory, and retaliatory conduct by Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10 (including through their employees and agents), and each of them, PLAINTIFF is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10, and each of them, to give effect to the rights of PLAINTIFF, and to take other appropriate action, based upon evidence produced at trial.

### *STATE CLAIMS*

### VII.

### THIRD CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Asserted against Defendants ROBARDS and RIDENOUR)

77.     PLAINTIFF incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

78.     On information and belief, Defendants ROBARDS and RIDENOUR engaged in conduct described herein—including their failure to protect the safety and wellbeing of PLAINTIFF in the

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

22

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

workplace from an employee against whom PLAINTIFF had a protective order, and to offer assurances of the same—that was extreme or outrageous with either the intention of, or reckless disregard for, causing emotional distress to PLAINTIFF.

79. Defendant ROBARDS and RIDENOUR's extreme and outrageous conduct, described herein, was outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community.

80. PLAINTIFF suffered severe or extreme emotional distress as the actual and proximate result of Defendant ROBARDS and RIDENOUR's conduct.

81. On information and belief, the extreme and outrageous conduct of Defendant ROBARDS and RIDENOUR, described herein, was intentional, malicious, wilful, oppressive, and done with a depraved heart and a reckless disregard of PLAINTIFF's rights, health, safety, and mental wellbeing, proximately causing injuries, damages, physical harm, and emotional harm to PLAINTIFF.

82. On information and belief, as a direct and proximate result of the intentional, malicious, wilful, oppressive, depraved, and reckless conduct of Defendant ROBARDS and RIDENOUR, described herein, PLAINTIFF has suffered damages, including for physical and mental injuries and harm, some of which will require future medical evaluation and treatment.

83. On information and belief, as a direct and proximate result of the intentional, malicious, wilful, oppressive, depraved, and reckless conduct of Defendant ROBARDS and RIDENOUR, described herein, PLAINTIFF has sustained damages in the form of great pain, suffering and anxiety, as well as emotional distress, permanent injury, and disability, in an amount to be proven at trial.

84. On information and belief, as a direct and proximate result of the intentional, malicious, wilful, oppressive, depraved, and reckless conduct of Defendant ROBARDS and RIDENOUR, described herein, PLAINTIFF has incurred, and will continue to incur in the future, medical expenses, the full nature and extent of which are not presently known, in an amount to be proven at trial.

85. On information and belief: as a direct and proximate result of the intentional, malicious, wilful, oppressive, depraved, and reckless conduct of Defendant ROBARDS and RIDENOUR,

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

described herein, described herein, PLAINTIFF is entitled to an award of punitive or exemplary damages, including for, but not limited to, the reasons that:

(a)     Defendant ROBARDS and RIDENOUR acted with malice, express or implied, and he engaged in conduct which was intended to injure a PLAINTIFF; and/or

(b)     Defendant ROBARDS and RIDENOUR engaged in despicable conduct, with a conscious disregard of the rights or safety of PLAINTIFF, knowing the probable harmful consequences of his wrongful acts and having a willful and deliberate failure to act to avoid those consequences.

86.     Defendant ROBARDS and RIDENOUR, described herein, as a direct and proximate result of the intentional, malicious, wilful, oppressive, depraved, and reckless conduct of Defendant ROBARDS and RIDENOUR, described herein, PLAINTIFF has had to retain the services of attorneys in this matter, and she therefore, seeks reimbursement for her attorneys' fees and costs.

**VIII.**

**FOURTH CLAIM FOR RELIEF**

**FALSE-LIGHT INVASION OF PRIVACY**

**(Asserted against Defendant Ridenour)**

87.     PLAINTIFF incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

88.     On information and belief: after PLAINTIFF left the employ of NEW FRONTIER, Defendants LOBARDS and RIDENOUR, through their acts, omissions, and communications, caused, allowed, and/or acquiesced in false statements, false innuendos, and/or false rumors to be publicized to third parties, including to co-workers at New Frontier Treatment Center—such false statements, false innuendos, and/or false rumors being that: (a) PLAINTIFF had faked suffering anxiety attacks, when she really did not, as described herein, and (b) PLAINTIFF had a romantic relationship with Mr. Dummar, which relationship went bad.

89.     On information and belief, such statements, innuendos, and rumors were false, and in fact, PLAINTIFF did not fake suffering anxiety attacks, and she did not have a romantic relationship with Mr. Dummar.

90.     Accordingly, on information and belief, Defendants LOBARDS and RIDENOUR, gave

publicity to a matter concerning PLAINTIFF that placed PLAINTIFF before the public in a false light.

91.     Such a false light in which the other was placed would be highly offensive to a reasonable person, including a person in PLAINTIFF's position and under the circumstances, described herein.

92.     On information and belief, at all relevant times herein, Defendants LOBARDS and RIDENOUR had knowledge of, or acted in reckless disregard as to the falsity of, the publicized matter and the false light in which PLAINTIFF would be placed.

93.     On information and belief, the culpable conduct of Defendants LOBARDS and RIDENOUR, alleged herein, was intentional, malicious, wilful, oppressive, and done with a depraved heart and a reckless disregard of PLAINTIFF's privacy, sensibilities, rights, health, safety, and mental wellbeing, proximately causing mental anguish and emotional harm to PLAINTIFF.

94.     On information and belief, as a direct and proximate result of the culpable conduct of Defendants LOBARDS and RIDENOUR, described herein, PLAINTIFF has sustained damages in the form of an invasion and affront to her privacy, seclusion, and tranquility, and further causing her suffering, anxiety, embarrassment, mental anguish, and inconvenience, in an amount to be determined at trial.

95.     On information and belief: as a direct and proximate result of the intentional, malicious, wilful, oppressive, depraved, and reckless conduct of Defendants LOBARDS and RIDENOUR, described herein, PLAINTIFF is entitled to an award of punitive or exemplary damages, including for, but not limited to, the reasons that:

(a)     Defendants LOBARDS and RIDENOUR acted with malice, express or implied, and they engaged in conduct which was intended to injure a PLAINTIFF; and/or

(b)     Defendants LOBARDS and RIDENOUR engaged in despicable conduct, with a conscious disregard of the rights or safety of PLAINTIFF, knowing the probable harmful consequences of his wrongful acts and having a willful and deliberate failure to act to avoid those consequences.

96.     On information and belief, as a direct and proximate result of the intentional, malicious, wilful, oppressive, depraved, and reckless conduct of Defendants LOBARDS and RIDENOUR, described herein, PLAINTIFF has had to retain the services of attorneys in this matter,

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

and she therefore, seeks reimbursement for her attorneys' fees and costs.

## IX.

### FIFTH CLAIM FOR RELIEF

### NEGLIGENCE / GROSS NEGLIGENCE / EGREGIOUS CONDUCT

### (Asserted against Defendants NEW FRONTIER, LOBARDS, RIDENOUR)

97.     PLAINTIFF incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

98.     On information and belief, at all times relevant herein, the DEFENDANTS sued in this claim knew that David Dummar was not fit to work in close proximity to PLAINTIFF in the workplace, including by reason of the TPO, and that he had dangerous propensities toward PLAINTIFF.

99.     On information and belief, at all times relevant herein, the DEFENDANTS sued in this cause of action knew that if precautions were not taken to prevent Mr. Dummar's close proximity to PLAINTIFF in the workplace, such a failure would foreseeably cause harm and further harm to PLAINTIFF, including acute anxiety.

100.     On information and belief, at all times relevant herein, the DEFENDANTS sued in this cause of action knew that if assurances were not provided to PLAINTIFF that precautions were taken to prevent Mr. Dummar's close proximity to PLAINTIFF in the workplace, then such a failure would foreseeably cause harm and further harm to PLAINTIFF, including acute anxiety.

101.     On information and belief, at all times relevant herein, the Defendants sued in this claim owed a duty of care to protect PLAINTIFF, from foreseeable harm that was certain to result to PLAINTIFF in the workplace by the physical presence of Mr. Dummar.

102.     On information and belief, at all times relevant herein, the Defendants sued in this claim owed a duty of care to protect PLAINTIFF, from foreseeable harm that was certain to result to PLAINTIFF in the workplace by the failure to provide PLAINTIFF assurances that Mr. Dummar would not be in close physical proximity to PLAINTIFF in the workplace.

103.     On information and belief: at all times relevant herein, the Defendants sued in this claim breached their duty of care and engaged in intentional or egregious conduct and deliberate actions

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

certain to result in PLAINTIFF's injuries, as stated herein, including by: (a) knowingly failing to prevent Mr. Dummar's close proximity to PLAINTIFF in the workplace; and (b) knowingly failing to provide PLAINTIFF assurances that Mr. Dummar would not be in close physical proximity to PLAINTIFF in the workplace.

104.    On information and belief, at all times relevant herein, the breaches of duty, intentional conduct, egregious conduct, and deliberate actions by the Defendants sued in this claim were the legal cause of PLAINTIFF's injuries, and PLAINTIFF suffered damages as a result.

105.    On information and belief: as a direct and proximate result of the intentional, malicious, wilful, oppressive, depraved, and reckless conduct of Defendants sued in this claim, described herein, PLAINTIFF is entitled to an award of punitive or exemplary damages, including for, but not limited to, the reasons that:

(a)    Defendants sued in this claim acted with malice, express or implied, and they engaged in conduct which was intended to injure a PLAINTIFF; and/or

(b)    Defendants sued in this claim engaged in despicable conduct, with a conscious disregard of the rights or safety of PLAINTIFF, knowing the probable harmful consequences of his wrongful acts and having a willful and deliberate failure to act to avoid those consequences.

106.    On information and belief, as a direct and proximate result of the intentional, malicious, wilful, oppressive, depraved, and reckless conduct of Defendants sued in this claim, described herein, PLAINTIFF has had to retain the services of attorneys in this matter, and she therefore, seeks reimbursement for her attorneys' fees and costs.

## X.

### SIXTH CLAIM FOR RELIEF

### NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION

### (Asserted against Defendants NEW FRONTIER, LOBARDS,

### and DOE BUSINESS ENTITIES 1-10)

107.    PLAINTIFF incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

108.    On information and belief, at all relevant times herein, Defendants NEW FRONTIER

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

and DOE BUSINESS ENTITIES 1-10, and each of them, were responsible for hiring, training, supervising, and retaining Defendants LOBARDS, RIDENOUR, and DOE INDIVIDUALS 1-50, and each of them, respectively.

109. On information and belief, at all relevant times herein, Defendant ROBARDS was responsible for hiring, training, supervising, and retaining Defendants RIDENOUR, and DOE INDIVIDUALS 1-50, and each of them, respectively.

110. On information and belief, at all relevant times herein, Defendants sued in this claim, and each of them, owed a general duty to conduct a reasonable background check on their potential employees, respectively, including Defendants ROBARDS, RIDENOUR, Mr. Dummar, and DOE INDIVIDUALS 1-50, and each of them, respectively, to ensure that such employees are fit for their positions at NEW FRONTIER, including at the New Frontier Treatment Center, and to prevent harm to other persons, including PLAINTIFF, by the employees' tortious or wrongful conduct, of the types alleged herein.

111. On information and belief, at information and belief, at all times relevant hereto, the Defendants sued in this claim, and each of them knew of the dangerous propensities of Mr. Dummar for engaging in the type of culpable conduct alleged herein.

112. On information and belief, at information and belief, at all times relevant hereto, the Defendants sued in this claim, and each of them knew of the dangerous propensities of Defendants ROBARDS and RIDENOUR to engage in the culpable conduct alleged herein.

113. On information and belief, at all times relevant hereto, the Defendants sued in this claim breached their respective duties of care when they hired Defendants ROBARDS and RIDENOUR and Mr. Dummar, and each of them, respectively, even though these Defendants knew or should have known of the dangerous propensities of these persons, as alleged herein, which dangerous propensities gave way to culpable conduct by these persons and each of them, respectively, as alleged herein, causing harm and injury to PLAINTIFF, as alleged herein.

114. On information and belief, at all relevant times herein, the Defendants sued in this claim, owed a general duty to use reasonable care in the training, supervision, and retention of their respective employees, Defendants ROBARDS and RIDENOUR and Mr. Dummar, and each of them, to make sure

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

that the employees are fit, and remain fit, for their positions, and to prevent harm to other persons, including PLAINTIFF, by the employees' tortious or wrongful conduct, of the types alleged herein.

115.   On information and belief, at all times relevant hereto, the Defendants sued herein breached their respective duties of care when they placed and retained in their respective employs Defendants ROBARDS and RIDENOUR, without properly training and supervising them, whom they knew, or should have known behave and behaved, wrongfully and, in the positions placed and retained, could or would harm someone else, and did harm PLAINTIFF, as alleged herein, such knowledge including their knowledge that Defendants ROBARDS and RIDENOUR were not taking prompt, appropriate, and corrective action against Mr. Dummar as alleged herein, in spite of the fact that he had not completed his sexual harassment training at the treatment center, and in spite of the fact that a TPO was issued against Mr. Dummar for the protection of PLAINTIFF, as alleged herein.

116.   On information and belief, at all times relevant hereto, the Defendants sued in this claim breached their respective duties of care when they placed and retained in their respective employs Mr. Dummar, without properly training and supervising him, whom they knew, or should have known behaves and behaved, wrongfully and, in the position placed and retained, could harm someone else, and did harm PLAINTIFF, as alleged herein, such knowledge including their knowledge that Mr. Dummar had not completed his sexual harassment training at the treatment center and their knowledge that a TPO was issued against Mr. Dummar for the protection of PLAINTIFF, as alleged herein.

117.   On information and belief, at all times relevant hereto, the Defendants sued in this claim, and each of them, were negligent in the training, supervision, and retention of Defendants ROBARDS and RIDENOUR and Mr. Dummar, and each of them, respectively, which failures caused the harm and injuries to PLAINTIFF, as alleged herein, relating to the claims herein.

118.   On information and belief, as a direct and proximate result of the negligent conduct of the Defendants sued in this claim, and each of them, alleged herein, PLAINTIFF has suffered damages, including for physical and mental injuries and harm, some of which may require future medical evaluation and treatment, in an amount to be proven at trial.

119.   On information and belief, as a direct and proximate result of the negligent conduct of the Defendants sued in this claim, and each of them, alleged herein, PLAINTIFF has sustained damages

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

in the form of great pain, suffering and anxiety, as well as emotional distress and permanent injury and disability, in an amount to be proven at trial.

120.    On information and belief, as a direct and proximate result of the negligent conduct of the Defendants sued in this claim, and each of them, alleged herein, PLAINTIFF has incurred, and will continue to incur in the future, medical expenses, the full nature and extent of which are not presently known, in an amount to be proven at trial.

121.    On information and belief, as a direct and proximate result of the negligent conduct of the Defendants sued herein, and each of them, PLAINTIFF has had to retain the services of attorneys in this matter, and she therefore, seeks reimbursement for her attorneys' fees and costs.

## XI.
### *RESPONDEAT SUPERIOR LIABILITY* [2]

**(Asserted against Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10)**

(Vicarious Liability of Employers for Conduct by Their Employees, Occurring in the Course and Scope of Employment by Defendants ROBARDS and RIDENOUR, Mr. Dummar and DOE INDIVIDUALS 1-50)

122.    PLAINTIFF incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

123.    On information and belief, at all relevant times herein, the Defendants sued in this claim, and each of them, were under the control of their respective employers, Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10.

124.    On information and belief, at all relevant times herein, the acts of Defendants ROBARDS and RIDENOUR, Mr. Dummar, and DOE INDIVIDUALS 1-50, and each of them, complained of herein, were culpable and caused injury and harm to PLAINTIFF, as alleged herein.

125.    On information and belief, at all relevant times herein, the culpable and injurious acts of

---

[2] Strictly speaking *Respondeat Superior* is not considered to be a "cause of action" or "claim for relief" but a method of assigning liability to an employer for the conduct of its employees.  *See Fernandez v. Penske Truck Leasing Co., L.P.,* 2012 WL 1832571, 1 (D.Nev. 2012) (citing *Cruz v. Durbin,* 2011 WL 1792765 (D.Nev. 2011)).  Accordingly, this section for *Respondeat Superior* is not labeled as a claim for relief, but it seeks to assign liability to Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10, vicariously, for the acts of their employees, Defendants ROBARDS and RIDENOUR, Mr. Dummar, and DOE INDIVIDUALS 1-50.

Defendants ROBARDS and RIDENOUR, Mr. Dummar, and DOE INDIVIDUALS 1-50, and each of them, occurred when they, were under the control of their respective employers, Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10, and such acts by these employees, occurred within the course and scope of their employment.

126.    On information and belief, based on the foregoing, PLAINTIFF is entitled to invoke the doctrine of *Respondeat Superior* to impose vicarious liability on Defendants NEW FRONTIER and DOE BUSINESS ENTITIES 1-10, as the respective employers of Defendants ROBARDS and RIDENOUR, Mr. Dummar, for the culpable conduct of these employees, occurring within the course and scope of their employment.

## XII.

### SEVENTH CLAIM FOR RELIEF

### DECLARATORY RELIEF

### (Asserted against All Defendants)

127.    PLAINTIFF incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

128.    On information and belief, pursuant to 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, 42 U.S.C. §§ 2000e-5, NRS 30.070, NRS 30.100, NRS 613.333, and the Court's inherent equitable powers, PLAINTIFF seeks, and is entitled to have, declaratory relief awarded in her favor, to declare her rights and the obligations of the Defendants sued herein, which matters are now in controversy or dispute, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below, including declaratory relief whereby the Court issues a Declaration that Defendant NEW FRONTIER and DOE BUSINESS ENTITIES 1-10, unlawfully discriminated and retaliated against PLAINTIFF, under Title VII and the ADA/ADAAA, and otherwise violated Plaintiff's rights under Federal Law, as alleged herein.

/ / /

/ / /

/ / /

/ / /

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

# XIII.

## EIGHTH CLAIM FOR RELIEF

## INJUNCTIVE RELIEF

### (Asserted against All Defendants)

129.    PLAINTIFF incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

130.    On information and belief, pursuant to 28 U.S.C. § 2201, Federal Rule of Civil Procedure 65, 42 U.S.C. §§ 2000e-5, and NRS 33.010 *et seq.*, and the Court's inherent equitable powers, PLAINTIFF is entitled to have injunctive relief awarded in her favor, as such relief or any part thereof consists in restraining the commission or continuance of the acts complained of, perpetually, and to compel the obligations of the Defendants sued herein to give effect to the declaratory and other relief awarded by the Court in this action, where such injunctive relief is necessary and proper to the resolution of the disputes raised herein, including as specifically prayed for below.

# XIV.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ALICIA DEPAULIS prays for judgment against Defendants, as follows:

1.    For equitable relief in the form of back-wages, front-wages, and for compensatory damages, and punitive damages as may be allowed for the employment discrimination claims arising under Title VII and the ADA;

2.    For general damages in an amount in an amount to be determined at trial;

3.    For special damages in an amount in an amount to be determined at trial;

4.    For past and future compensatory damages, costs of medical care and treatment and other expenses incurred by reason of any intentional misconduct, acts, omissions, carelessness, recklessness, negligence, gross negligence, indifference, and other culpable conduct by Defendants, alleged herein, in an amount in an amount to be determined at trial;

5.    For punitive and exemplary damages, in an amount in an amount to be determined at

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

trial;

6.      For costs of the suit incurred herein, in an amount in an amount to be determined at trial;

7.      For attorneys' fees, costs and prejudgment interest, in an amount in an amount to be determined at trial;

8.      For experts' fees, costs as allowed by law, in an amount in an amount to be determined at trial;

9.      For Declaratory relief, equitably determined by the Court at trial;

10.     For Injunctive relief, equitably determined by the Court at trial;

11.     For such other relief as the Court may deem just and proper; and

12.     Pursuant to the *Federal Rules of Civil Procedure*, Rule 38, Plaintiff demands a trial by jury on all issues triable by right of a jury.

Dated this 21st day of November, 2016.


                                                THE GEDDES LAW FIRM, P.C.


                                                _____
                                                WILLIAM J. GEDDES
                                                Nevada Bar Number 6984
                                                The Geddes Law Firm, P.C.
                                                8600 Technology Way, Suite 115
                                                Reno, Nevada  89521
                                                (775) 853-9455
                                                *Attorney   for   Plaintiff   Alicia*
                                                *DePaulis*

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

## VERIFICATION OF COMPLAINT

I, ALICIA DePAULIS, declare that I am the plaintiff in the above-captioned pleading, that I have read the foregoing *Complaint* and know the contents thereof, and the factual allegations of the same are true to my knowledge, except where asserted on information, and belief, and in such instances I am informed and believe such allegations are true, according to my information and belief.

Pursuant to 28 U.S.C. § 1746, Declarant herein certifies, under penalty of perjury, that the foregoing is true and correct.

Executed on this 21st day of November, 2016.

_____
ALICIA DePAULIS, *Plaintiff*

The Geddes Law Firm, P.C.
8600 Technology Way, Suite 115
Reno, NV 89521
Phone 775-853-9455

34